# GENERAL TERMS AND CONDITIONS

1. **Entire Agreement.** Except as otherwise agreed in writing by Buyer and Seller, these General Terms and Conditions ("Terms") constitute the final expression of the agreement between Buyer and Seller with respect to the subject matter hereof and a complete, fully integrated and exclusive statement of their agreement in the regard and they are no unstated charges, agreements, covenants, representations or warranties of any kind, express or implied, not expressly set forth herein. No provision of any purchase order or other document issued by Buyer that alter or add to the terms of these Terms other than general commercial terms that vary from purchase order to purchase order, such as location, dates and price, and any such provision or modification will be void and of no effect. No modification or extension of these Terms by Buyer will be binding unless it is in writing and is signed by an authorized representative of Seller, and no conduct modification of these Terms shall be effected by the parties' course of dealing, usage, or trade custom. In addition, no application of §2-207 of the Uniform Commercial Code (or its local equivalent) (i.e. "knock out" or otherwise modify, award, supplement or supersede any terms or conditions of these Terms, shall have any effect and is expressly rejected. By taking delivery of Product, Buyer shall be conclusively deemed to have accepted and assented to these Terms. In the event that Buyer and Seller engage in any electronic transaction, including, but not limited to, electronic data interchange or facsimile exchanges, such electronic transactions shall be considered as valid and legally binding and shall be subject to the terms and conditions of these Terms.

2. **Separate Transactions.** All Purchase Orders will be subject to written acceptance by Seller. Each shipment shall constitute a separate and independent transaction, and Seller may cover for such shipment without reference to any other. If Buyer is in default of any term or condition of these Terms, Seller may, at its option, without waiving its right to terminate these Terms order further shipments hereunder, in its discretion, provide Buyer with assistance on regulatory issues, disposal options may elect to extend the term of these Terms for a period of time equal to the period of the during which shipments were so delivered; or, in addition to any other right or remedy of Seller, Seller may decline further performance of these Terms. Seller may furthermore delay or refuse to ship Product to Buyer if Buyer delays delivery or is in breach of any provision of these Terms, or if in Seller's opinion the delivery or the use of Product may result in an environmental, health or safety danger or hazard. Seller may, but shall not be obligated to, grant credit terms to Buyer. Acceptance of any order is subject to final credit approval by Seller. In the judgment of Seller, the financial responsibility of Buyer shall at any time become impaired, Seller may without notice to Buyer suspend credit, cancel any unfilled orders, and/or decline to make further deliveries under these Terms except upon receipt, before shipment, of payment in full or satisfactory security for such payment. Buyer agrees, upon request, to provide Seller with its most recent financial statements and such other evidence of corporate and financial standing as Seller may reasonably request from time to time to evaluate Buyer's creditworthiness.

3. **Product Returns.** No Product sold hereunder shall be returned to Seller without Seller's prior written permission. Approved Product returns shall be subject to a restocking charge equal to 25% of the then-current sold FOB Seller's warehouse price. If Seller orders Product returned, Buyer will return freight charges for Buyer's account. For Product that cannot be returned, Seller may, in its discretion, provide Buyer with disposal recommendations, which may include disposal options and cost estimates. If Seller orders Product based on an estimate provided by Buyer or orders Products which Seller does not normally carry in inventory, Buyer shall be obligated to purchase all such Products unless Seller is able to resell the Products at the same price and on substantially the same terms and conditions within thirty (30) days after receipt of such Products from Buyer.

4. **Warranties.**

   4.1 Subject to Sections 4.2, 4.3 and 4.4, Seller will replace, if necessary, any Product that does not meet the Product Specifications Submitted by Buyer ("Specs"), if any, on page one (1) of the attached cover sheet of, if none, the manufacturer's specifications. Seller may, at its sole option, elect to refund Buyer for the purchase price paid for any defective Product which is subject to and conditional upon:
   
   (a) Buyer's account with Seller being current and in good standing;
   (b) written notice from the Buyer within seven (7) days of delivery of any Product that does not meet specifications;
   (c) provision of independent evidence satisfactory to Seller that the Product doesn't meet specifications;
   (d) the provision of a sample of the Product to Seller for testing;
   (e) return of the Product to Seller with Seller's or manufacturer's instructions;
   (f) decontamination of storage receptacles in accordance with statutory regulations and use of best practices prior to placing any Product in the receptacle; and
   (g) use of Products for their intended purpose.

   4.2 This warranty excludes damage to or alteration of Products arising from circumstances outside the control of Seller, including, without limitation, mixing of other chemicals or products.

   4.3 The Buyer agrees to use the Products in accordance with:
   (a) any instructions provided to it by Seller from time to time;
   (b) all federal, state and local laws and regulations governing the storage, use and maintenance of the Products; and
   (c) best industry practices.

   4.4 Section 4.1 constitutes Buyer's sole remedy and Seller's sole obligation with respect to Products furnished hereunder.

   4.5 EXCEPT AS EXPRESSLY SET FORTH HEREIN SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY, NON-INFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, NOTHING CONTAINED HEREIN SHALL BE CONSTRUED AS A WARRANTY WITH RESPECT TO THE RESULTS OBTAINED OR OBTAINABLE FROM THE USE OF ANY PRODUCTS SUPPLIED OR THE WORK OR SERVICES PERFORMED BY SELLER HEREUNDER.

   4.6 Determination of the suitability of the Product(s) supplied hereunder for the uses and applications contemplated by Buyer and others shall be the sole responsibility of Buyer.

5. **Claims.** No claim shall be allowable for any such Product has been unpackaged, processed, altered or combined with any material in any manner, and claims on account of defect in quality, in amount, or loss of, damage to, or shortage in quantity of the Product shall be deemed to be waived by the Buyer unless made in writing within seven (7) days from the date of receipt at destination. The parties will attempt in good faith to resolve any dispute through negotiation between an Executive Officer of each of the parties with authority to settle the dispute. If the Dispute has not been settled within thirty (30) days from the date on which the party initiating the Dispute has served written notice on the other party, then the Dispute shall be solely, exclusively and finally resolved by binding arbitration administered by the American Arbitration Association in accordance with its commercial arbitration rules. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction.

6. **Limitation of Liability; Limitation of Damages; Remedies.** BUYER ASSUMES AND RELEASES SELLER OF AND FROM ALL RISKS AND RESPONSIBILITY RESULTING FROM THE PURCHASE, HANDLING, USE, STORAGE, OR RESALE OF THE PRODUCTS, WHETHER USED SINGLY OR IN A COMBINATION WITH OTHER PRODUCTS. SELLER ASSUMES NO OBLIGATION OR LIABILITY FOR ANY TECHNICAL ADVICE GIVEN BY SELLER WITH REFERENCE TO USE OF THE PRODUCTS OR RESULTS WHICH MAY BE OBTAINED THEREFROM, AND ALL SUCH ADVICE IS GIVEN AND ACCEPTED AT BUYER'S SOLE RISK. BUYER HEREBY WAIVES ALL CLAIMS AGAINST SELLER FOR CONSEQUENTIAL DAMAGES, LOSS OF USE, LOSS OF PROFITS OR BUSINESS OPPORTUNITIES OR ANY OTHER INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY OR PUNITIVE DAMAGES, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR SUCH DAMAGES COULD HAVE BEEN REASONABLY FORESEEN, AND BUYER AGREES TO DEFEND, INDEMNIFY AND HOLD SELLER, ITS SUBSIDIARIES, AFFILIATED COMPANIES AND THEIR RESPECTIVE EMPLOYEES, OFFICERS AND AGENTS (COLLECTIVELY, "SELLER GROUP") HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES, DAMAGES, LIABILITIES, COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEY'S FEES) ARISING OUT OF, OR RELATED TO THESE TERMS, provided PRODUCTS. BUYER'S EXCLUSIVE REMEDY AND SELLER GROUP'S TOTAL LIABILITY HEREUNDER, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, SHALL IN NO EVENT (A) IN THE CASE OF PRODUCT RELATED CLAIMS, EXCEED THE PURCHASE PRICE PAID BY BUYER FOR THE QUANTITY OF PRODUCT WITH RESPECT TO WHICH SUCH CLAIM IS MADE, OR (B) IN ALL OTHER CLAIMS, EXCEED THE DAMAGES DIRECTLY AND PROXIMATELY CAUSED BY THE EVENT WITH RESPECT TO WHICH SUCH CLAIM IS MADE, SUBJECT IN ALL CASES TO AN AFFIRMATIVE OBLIGATION ON THE PART OF BUYER TO MITIGATE ITS DAMAGES. IN THE CASE OF BULK DELIVERIES, SELLER GROUP'S TOTAL LIABILITY SHALL IN NO EVENT EXCEED THE PURCHASE PRICE PAID BY BUYER FOR THE DELIVERY OF PRODUCT IMMEDIATELY PRECEDING THE DATE OF SUCH CLAIM. SUBJECT IN ALL CASES TO AN AFFIRMATIVE OBLIGATION ON THE PART OF BUYER TO MITIGATE ITS DAMAGES. BUYER HEREBY SPECIFICALLY WAIVES ALL OTHER RIGHTS, IF ANY, TO INDEMNIFICATION BY SELLER WHICH MAY BE AVAILABLE AT LAW OR IN EQUITY INCLUDING UNDER STATE, FEDERAL OR COMMON LAW. SELLER SHALL HAVE NO LIABILITY TO BUYER HEREUNDER IF THE PRODUCT IS NOT USED IN ACCORDANCE WITH ITS INTENDED PURPOSE OR THE REQUIREMENTS OF THE FEDERAL FOOD, DRUG AND COSMETIC ACT OR OTHER APPLICABLE LAW.

7. **Safety.**

   7.1 Buyer acknowledges that the Products may present hazards associated with this possession and use of the Product and its contents and shall assume all liability resulting from, or in any way connected with, or for their possession, transportation, handling, resale or use, or its or their suitability for any particular use. Buyer acknowledges the hazardous nature of the Product, and that it has a duty to warn, protect and train its employees and all persons who may be exposed to the Product through its appropriate use in accordance with the Safety Data Sheet(s) ("SDS"). Upon request of Buyer, Seller shall supply Buyer with a current Safety Data Sheet for the Products.
   
   7.2 In the event any hazard is present, Buyer should consult the SDS, Buyer will ensure that all of its employees and other persons who might become exposed to the Product receive and refer to copies of the SDS.

   7.2 In the event Buyer elects to respond to an emergency involving Product sold by Seller, Buyer hereby consents to, and releases Seller Group may take or fail to take in connection with such emergency. Buyer furthermore agrees to defend, indemnify and save Seller Group harmless from and against any and all losses, damages, injuries, liabilities, actions, claims or proceedings of whatever nature, arising directly or indirectly in connection with such emergency, whether or not based on Seller Group's acts or omissions.

8. **Returnable Containers.**

   8.1 Buyer acknowledges that containers shall remain the property of Seller and shall not be used by Buyer for purposes other than the storage of Product delivered therein by Seller.
   
   8.2 Unless Buyer is authorized to distribute the Products delivered hereunder pursuant to a written agreement with Seller, the Products are supplied to Buyer for Buyer's internal use only, and Buyer may not repackage, resell or otherwise distribute the Products to third parties without the prior written consent of Seller. Even if Seller's consent is granted, Buyer agrees to comply with all applicable export laws and regulations with respect to the Products and to transship or resell Product to any person or entity who is a "Prohibited Person" as defined by the Office of Foreign Assets Control.
   
   8.3 Seller shall not use the Seller's trademarks or any part thereof as part of Buyer's name, or register any name, including domain names, or mark confusingly similar to the Seller's trademarks.
   
   8.4 All specifications, formulas, drawings, illustrations, descriptive matter and particulars contained in Seller's catalogs, website and marketing documents (the "Descriptions") are indicative only, do not form part of these Terms and are not representations or warranties of any kind. No discrepancy between the Products and the Descriptions will entitle the Buyer to rescind these Terms.
   
   8.5 If Buyer reports any amendment to these Terms, Seller may, at any time and such changes shall apply to orders placed after the change.
   
   8.6 If Buyer represents and warrants that it is not a "Prohibited Person" as defined by the Office of Foreign Assets Control.
   
   8.7 Unless Buyer is authorized to distribute the Products to third parties without written agreement with Seller, the Products are supplied to Buyer for Buyer's internal use only, and Buyer may not repackage, resell or otherwise distribute the Products to third parties without the prior written consent of Seller. Such records will be retained by the Buyer for at least twenty-four (24) months following the delivery of the Products. In order to determine whether Buyer has complied with its obligations under these Terms, Seller will have the right, upon reasonable notice, to require Buyer's records during regular business hours provided such inspections do not unreasonably interfere with Buyer's business.

9. **Delivery.**

   9.1 Unless otherwise agreed in writing by Seller all prices are ex FOB carrier, Seller's warehouse and all risks and loss of the Product shall pass to Buyer as of FOB point. Seller is not responsible for any loss, damage, or delay that may occur after Products have been accepted for shipment by the carrier. Claims for any shortage, excess, misshipment, or defect in any Product must be reported to Seller within seven (7) days of receipt of the Product by Buyer. Seller shall not be responsible for any Claim for shortages or failure to meet specifications unless Buyer's notice thereof is received in accordance with applicable law. Buyer agrees to the terms and conditions of the Product.
   
   9.2 Buyer shall corporate fully with Seller's efforts to deliver Product, and shall be appropriately prepared to safely and promptly receive Product when delivery is made.
   
   9.3 Buyer is responsible for checking all Products to ensure that the correct volume, concentration, levels, and types of Products have been received. Any shortage, excess, missshipment, or defect in any Product must be reported to Seller within seven (7) days of receipt of the Product by Buyer. Seller shall not be responsible for any Claim for shortages or failure to meet specifications after this time. In case of bulk carloads or tank car shipments, Seller's weight, and if of loss or absent manifest error.
   
   9.4 Buyer shall provide adequate access to supply ship at no cost to Seller. Seller has no obligation to deliver Product by any means in a suitable receptacle, to allow for the efficient unloading of the Products.
   
   9.5 Late delivery or failure to supply shall in no event entitle Buyer to vary or cancel these Terms, or to claim damages in respect thereof. Delivery of Products to Buyer's location shall constitute delivery to Buyer, and all risk of loss or damage shall thereafter be assumed by Buyer.

9.6 Upon Buyer's reasonable request, Seller may, at its option, assist Buyer in loading or unloading Product, but such assistance will be rendered at Buyer's sole risk. BUYER SHALL DEFEND, INDEMNIFY AND SAVE SELLER GROUP HARMLESS FROM ANY AND ALL LOSSES, DAMAGES, INJURIES, LIABILITIES, ACTIONS, CLAIMS OR PROCEEDINGS OF WHATEVER NATURE ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH LOADING, DELIVERY OR UNLOADING OF THE PRODUCTS WHETHER OR NOT BASED ON SELLER GROUP'S ACTS OR OMISSIONS.

**Demurrage and Buyer's Duty.** If Product are shipped in tank wagons or tank trucks, such as trailers furnished by a carrier, all charges made by the carrier for detention at destination shall be for Buyer's account and shall be payable to Seller. Buyer will unload and return delivery equipment within the tariff or contracted period without incurring any demurrage and/or detention charges. If the delivery of Products is delayed or prevented by circumstances outside Buyer, including, without limitation, by Buyer's inability to accept delivery, Buyer shall pay all costs associated with this delay/delivery, storage of the Products, insurance, and any costs incurred by Seller in making further arrangements to deliver the Products.

10. **Revision of Price.** Seller shall have the right to revise the price of any Product by written notice made by (e-mail, (ii) regular first class mail, or (iii) facsimile transmission to Buyer. In the event Seller is prevented by any government restriction from increasing any price herein or from continuing any price already in effect, Seller may terminate these Terms upon fifteen (15) days prior written notice to Buyer. Notwithstanding the foregoing, Seller may adjust the prices of any imported Product without notice as any time after acceptance to the extent necessary to account for changes in applicable foreign exchange rates or any changes in customs duties or other governmental imposts.

11. **Payment, Price and Non-Price Charges, Credits.**
    
    12.1 Until a specific order is shipped by Seller, quoted prices are subject to change without notice. Orders may not be canceled once accepted by Seller. Charges for the route indicated on Seller's invoice. Acceptance by Seller of sales drafts, checks or other forms of payment is provisional only and is subject to immediate collection of the full face amount thereof. Buyer agrees to pay all taxes (if any) upon the sale, delivery, storage and use of Product. Buyer shall reimburse Seller for all taxes, increases in or new taxes, excises, duties or other charges which Seller may be required to pay to any federal, state or local government upon, or measured by, the production, transportation or use of any Product sold hereunder, [including taxes on Seller's income are properly].
    
    12.3 If Buyer does not place C.O.D. (or Seller may (i) place Buyer on C.O.D. (if suspect deliveries, and/or (ii) charge interest at a rate of two percent (2%) per month (compounded monthly), or the maximum allowed under applicable law, if less, on all overdue charges and interest.
    
    12.4 Buyer shall pay the fees and prices set forth in these Terms and any special non-price charges (including temporary emergency, plant outage, insurance and fuel and energy surcharges) that Seller may assess, from time to time. Non-price charges are not subject to the provisions of Section 11 and may be amended or added at Seller's discretion. Any credit issued by Seller to Buyer on account of Products may only be applied against the cost of Products purchases from Seller and will not be paid in cash. Any such credit will also be subject to expiration ninety (90) days after the date of issuance, and Seller will have no obligation with respect thereto in the event that Buyer does not apply the credit prior to such expiry date.

12.5 Buyer shall have no right of set-off or withholding and no deduction of amounts due from Buyer to Seller shall be made without Seller's prior express written approval.

13. **Force Majeure; Allocation of Product.**
    
    13.1 Seller shall not be liable to damages or otherwise, for delay or impairment or failure of performance by reason of causes beyond Seller's reasonable control, including without limitation, claims of force majeure, weather, acts of God, acts of war, acts of terrorism, acts of government, embargoes, fires, labor difficulties, shortage of fuel, power, raw materials or supplies, inability to obtain shipping space, transportation failures, acts of terrorism, acts of God, acts of war, acts of government, embargoes, fires, labor difficulties, shortage of fuel, power, raw materials or supplies, inability to obtain shipping space, transportation failures, strikes, lockouts, government regulations or any other cause beyond its reasonable control. If such event continues for more than thirty (30) days, either party may upon written notice terminate the unperformed portion of any order so affected. Seller may terminate these Terms upon written notice to Buyer. Nothing contained in this section shall be interpreted or construed to require Seller to sell Products to Buyer if such sale would have an adverse economic impact on Seller.
    
    13.2 If, at any time, in Seller's opinion there is a period or shortage of supply of Products for any reason, Seller may allocate its inventory between Buyer and Seller's other customers in its sole discretion with no obligation to Seller's other customers or its manufacturers or suppliers, except as may be required by law, and Seller waives any right to object to such allocation by Seller.

14. **Shipping Methods and Schedules.** Unless at the time of Buyer's acceptance of Seller's quotation, Buyer specifies in writing the desired method of transportation (air express, motor freight, etc.), Seller will use its judgment in selecting the carrier and mode. Delivery schedules are estimated and assume timely receipt of all necessary information and documentation from Buyer, and Seller assumes no responsibility for delays. If Buyer delays delivery of any Product, charges may accrue to Buyer at Buyer's sole risk and expense pending instructions from Buyer.

15. **General Provisions.**
    
    15.1 If Buyer takes the benefit of or becomes subject to any provision of applicable bankruptcy or insolvency law or voluntarily commences a proceeding under any such law, or votes any applicable law, Seller will have the right, by written notice, to immediately terminate these Terms. Seller's waiver to enforce these Terms, in addition to any other rights Seller may have at law or in equity. If within ten (10) days of being notified by Seller, Buyer has failed to remedy a monetary or any other default.
    
    15.2 Buyer may not assign these Terms or any of its rights hereunder without Seller's written consent. For the purposes of these Terms, any assignment shall include any assignment by merger or other operation of law. These Terms shall be binding upon and inure to the benefit of the respective successors and permitted assigns of each of the parties hereto. Buyer will obtain a written assumption of these Terms, in form acceptable to Seller, from any permitted transferee of Buyer. Any purported assignment in violation of this Section shall be void and of no effect.
    
    15.3 These Terms shall be governed by, and enforced in accordance with the laws of the state in which the Seller's corporate office is located without reference to its conflict of law rules. Buyer, by taking delivery of any Product hereunder, shall be conclusively deemed to have consented to the personal jurisdiction in the aforementioned state and to have waived any right to object to such jurisdiction on any basis, including but not limited to, forum non conveniens. Seller shall be entitled to recover its costs and expenses, including reasonable attorney's fees, in any court proceeding brought by Seller in connection with these Terms. Each party knowingly, voluntarily, and intentionally waives, to the full extent permitted by applicable law, any right it may have to a trial by jury in any legal action, proceeding, cause of action or counterclaim arising out of or relating to these Terms. Each party represents that it has consulted or had opportunity to consult legal counsel with respect to this waiver.
    
    15.4 At Seller's option, any disputes between the parties (a "Dispute") that (a) does not involve a third party and (b) arises out of or relates in any way to (i) these Terms or (ii) any sale and purchase or use of Products hereunder shall be subject to the following dispute resolution procedure. The parties will attempt in good faith to resolve any Dispute through negotiation between an Executive Officer of each of the parties with authority to settle the Dispute. If the Dispute has not been settled within thirty (30) days from the date on which the party initiating the Dispute has served written notice on the other party, then the Dispute shall be solely, exclusively and finally resolved by binding arbitration administered by the American Arbitration Association in accordance with its commercial arbitration rules. Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The arbitration shall take place before a panel of three (3) arbitrators, unless the amount in controversy exceeds two hundred and fifty thousand USD ($250,000), in which case the arbitration shall take place before a panel of three (3) arbitrators. The arbitrators thus appointed shall choose the third arbitrator. In the event three arbitrators are to be appointed, each party shall appoint one arbitrator within five (5) business days of being notified of the appointment of the first arbitrator. The language of the arbitration shall be English. The decision of the arbitrators(s) shall be final and binding on the parties. The arbitrator shall be empowered to award money damages, but shall not be empowered to award any damages precluded by these Terms, or any injunctive or any other equitable relief. The parties shall be entitled to seek redress from the courts for any Dispute involving a third party. No demand for arbitration may be made after the occurrence of the event giving rise to such demand. The parties hereby expressly exclude the application of the United Nations Convention on Contracts for the International Sale of Goods to these Terms.
    
    15.5 Except as to revisions in prices which, are governed by Section 11 herein, any notices required or given in connection with these Terms shall be sent or delivered in writing and made by (i) registered mail, (ii) certified mail, (iii) overnight courier mail, or (iv) fax (with confirmation of receipt), to the address and to the attention of the person specified on the cover sheet, which the parties agree to promptly update as necessary. For any notice regarding a breach or termination hereof or as effective against Seller, a copy of such notice shall be sent to Brenntag North America, Inc., 5083 Pottsville Pike, Reading, PA 19605, Attention: General Counsel. Notice shall be deemed given on the day on which it is actually received or refused by the other party.
    
    15.6 The waiver by either party of any of its rights under these Terms shall not be construed as constituting a precedent, and shall not in any way affect, limit or prevent such party's right thereafter to enforce and compel strict compliance with each and every term or condition contained herein. No waiver shall be effective unless it is in writing and signed by the party against whom the waiver is sought to be enforced. The acceptance by the Seller of any payment after the specified due date shall not constitute a waiver of the Buyer's obligation to make further payments on the specified due dates.
    
    15.7 If any provision or provisions of these Terms shall be held to be illegal or unenforceable the legality and enforceability of the remaining provisions shall not in any way be affected or impaired. The Section headings are for convenience only and shall not be used in interpreting these Terms.
    
    15.8 All specifications, formulas, drawings, illustrations, descriptive matter and particulars contained in Seller's catalogs, website and marketing documents (the "Descriptions") are indicative only, do not form part of these Terms and are not representations or warranties of any kind. No discrepancy between the Products and the Descriptions will entitle the Buyer to rescind these Terms.
    
    15.9 Seller may vary or amend these Terms at any time and such changes shall apply to orders placed after the change.
    
    15.10 If Buyer requests any amendment to these Terms, Seller may increase the prices of Products to account for any increased costs occasioned thereby.
    
    15.11 Buyer represents and warrants that it is not a "Prohibited Person" as defined by the Office of Foreign Assets Control.
    
    15.12 Unless Buyer is authorized to distribute the Products delivered hereunder pursuant to a written agreement with Seller, the Products are supplied to Buyer for Buyer's internal use only, and Buyer may not repackage, resell or otherwise distribute the Products to third parties without the prior written consent of Seller. Even if Seller's consent is granted, Buyer agrees to comply with all applicable export laws and regulations with respect to the Products and to transship or resell Product to any person or entity who is a "Prohibited Person" as defined by the Office of Foreign Assets Control.
    
    15.13 Seller shall not use the Seller's trademarks or any part thereof as part of Buyer's name, or register any name, including domain names, or mark confusingly similar to the Seller's trademarks.
    
    15.14 The relationship of the parties hereto is that of Buyer and Seller. Nothing in these Terms, and no course of dealing between the parties, shall be construed to create or imply an employment or agency relationship or a partnership or joint venture relationship between the parties or between one party and the other party's employees or agents. Accordingly, neither party shall be empowered to bind the other party in any way to incur any liability or obligations on behalf of the other party. Each party shall be solely responsible for payment of its employees' salaries (including withholding of income taxes and social security), workers compensation, and all other employee benefits.
    
    15.15 Buyer shall maintain true and complete records in connection with the purchase and sale of Products. Such records will be retained by the Buyer for at least twenty-four (24) months following the delivery of the Products. In order to determine whether Buyer has complied with its obligations under these Terms, Seller will have the right to audit Buyer's records during regular business hours provided such inspections do not unreasonably interfere with Buyer's business.
    
    15.16 The terms of these Terms are strictly confidential and Buyer shall not use or disclose the terms hereof without Seller's prior written consent.
    
    15.17 None of these Terms may be exercised in use or more combinations, each of which will be deemed to be an original, but all of which together will constitute one and the same instrument, without necessity of production of the other.
    
    15.18 Signature by facsimile or by email in a portable document format (.pdf) shall also bind the parties to these Terms.
    
    15.19 Any provision of these Terms that expressly or by its nature is intended to survive the termination of these Terms, shall survive indefinitely.

(REV. 11.17)

EXHIBIT 3